## East Tennessee Telephone Co. v. Jeffries.

(Decided March 28, 1913.)

## Appeal from Fayette Circuit Court.

1. Personal Injuries—Action For—Telephone Company—Pleading —Variance.—Appellee having broken his leg by a fall from a ladder furnished him by appellant for removing a telephone, it is immaterial that his injuries were, as shown by the evidence, caused by the coming apart of the ladder. As it came apart because of a defect in the metal brace for holding it together, the brace in giving away, "broke," in the meaning of the averment to that effect contained in the petition. There was therefore no variance between the allegation and proof.

2. Instructions.—The instructions given the jury in effect erroneously required them to apply in this case the rule stated in Bogenschuts v. Smith, 84 Ky., 330; whereas, the facts required the application of that announced in Phisterer v. Peter & Co., 117 Ky., 501.

3. Master and Servant—Rule As To Ordinary Care in Furnishing Tools—Instructions.—It is a well settled rule of law that the duty of using ordinary care in the matter of furnishing the servant reasonably safe tools, materials and place to work, is primarily on the master, and that the servant is under no duty to discover defects therein, unless the character of his employment is such as to require of him inspection of such tools, materials or place of work, or he knows of the defects in same, or they are so obvious that a person of his experience and understanding must have discovered them. The instructions set out in the opinion should be given on another trial.

4. Instructions—Action for Damages for Breaking Leg—Evidence.— As appellee's leg was broken three times, and the injury resulting from the second breaking is the one for which appellant is sued, the court erred in failing to instruct the jury that if they

found for appellee, they could not in estimating his damages allow him anything for the first or third breaking of his leg; nor for the amputation following the third breaking, unless they believed from the evidence that such amputation was the necessary, direct and proximate result of the second breaking of his leg.

GEO. C. WEBB for appellant.

FALCONER & FALCONER, MAURY KEMPER and CHESTER D. ADAMS for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This is an appeal from a judgment entered upon a verdict whereby appellee recovered of appellant $8,500.00 damages for the breaking of his leg while in its employ and engaged in the work of installing and taking out telephones; it being alleged in the petition that the injury to appellee's leg was caused by the negligence of appellant in providing him with a step ladder for use in performing its work, which was not reasonably safe for such use, and by reason of its defective condition broke with appellee's weight, threw him to the ground and fractured his leg.

The answer traversed the averments of the petition and pleaded that appellee knew of the defective condition of the ladder, and by continuing its use with such knowledge, assumed such risk as resulted therefrom; and in addition, in the matter of receiving his injury, was guilty of contributory negligence, but for which he would not have been injured. These pleas were controverted by reply.

It appears from the evidence that appellee, when injured, was engaged, in obedience to an order of his superior, in removing a telephone and wire attachment from a house on Whitley Avenue in the city of Lexington. The following excerpt from his testimony will show how he was injured:

"I took the telephone off the wall and set it outside of the house, and went back and took the box out and took the wires out and went out on the porch to take the wire off the porch and back to the pole. I got the ladder to get the little fixtures off—the little glass knobs off the house, and I went up the ladder, and as I started down, the ladder broke at the top and threw me and the ladder over against the fence. * * * The ladder sets up this

way, with steps on one side and boards on the other, and
it came loose at the top where the brace is fastened at
the top of the ladder; and when it gave way, it gave way
on the left hand side facing the steps; and when it gave
way the ladder and I both come over against the fence.
* * * My legs were in between the boards, the side that
leads to the top, the steps, and I tried to get my leg out
and couldn't, so I raised the steps and pulled my leg out
and got up and tried to stand on it and couldn't. * * *
Broke the bones in the leg.''

It appears that appellee's leg was broken three times;
each fracture being in the same place. The first occurred
in November, 1908, and was a compound fracture; that
is, both bones of the leg were broken just below the knee,
and one or both bones protruded through the flesh. At
that time appellee was in appellant's employ. This frac-
ture gradually healed by a knitting of the bones, but left
a small granulated sore in the flesh where the bones had
protruded. By August, 1909, appellee could walk about
with a cane and on August 1st again went to work for
appellant. On September 3, 1909, the second breaking of
his leg occurred as already described. Following this
injury appellee remained in the hospital, or at home,
under the treatment of a physician for several months
and until the fracture again healed, leaving the knee stiff
and compelling him to walk with a crutch. On March 1,
1910, while riding in a market wagon, he fell and broke the
leg the third time. After several months in a hospital,
the injured leg, by the advice of his physician was am-
putated, and, in lieu thereof he now has a cork leg.

When appellee entered appellant's service, August 1,
1909, he was furnished, when its use was required in his
work, a wagon equipped with necessary tools, including
the step ladder by which he was injured. The ladder, it
seems, when not in use, remained on the wagon at ap-
pellant's Lexington supply quarters. Appellee testified
that he had not seen or used the step ladder from the
time he re-entered appellant's service August 1, 1909,
until the day he was injured September 3, 1909, and
did not know of its defective condition. His testimony,
and that of one or two witnesses introduced in his behalf,
conduced to prove that the ladder was kept at appellant's
supply quarters and in the custody of its superintendent
or manager, who was charged with the duty of keeping
it in good condition, and that he knew or by the exercise

of ordinary care could have known of its defective condition in time to have prevented appellee's injury.

On the other hand, appellant's evidence conduced to show that appellee made some use of the step ladder between August 1st and the date of his injury, and that he knew or by the exercise of ordinary care might have known, of its defective condition. The appellant seeks a reversal upon two grounds: (1) Error in giving and refusing instructions. (2) Excessiveness of the damages recovered.

The trial court refused all instructions offered by appellant and appellee, and, on its own motion, gave the nine instructions found in the record. In our opinion, the instructions numbered, one, two, three and seven should not have been given. One, two and seven contain the same error, namely, advised the jury that in order to find for appellee it was necessary for them to believe from the evidence, not only that he did not know at the time of receiving his injury that the ladder was not reasonably safe for use, but also that he could not by the use of ordinary care have ascertained that fact; and that appellant knew, or by the use of ordinary care could have known, that the ladder was not reasonably safe for appellee's use. It is evident from the language of the instructions referred to, that the trial court was of opinion that the facts of the instant case brought it within the rule announced in Bogenschutz v. Smith, 84 Ky., 330, which in effect holds, that if the information of the master and servant with respect to the place of work or tools with which to perform the work, are equal, and if both are either without fault or in equal fault, the servant cannot recover damages of the master. This rule was first declared in England and later followed in many of the American states, but it has, in this State been so modified in cases decided since that of Bogenschutz v. Smith, as to have been practically disaffirmed. Pfisterer v. J. H. Peter & Co., 117 Ky., 501; L. & N. R. R. Co. v. Foley, 94 Ky., 224; Olive Hill Fire Brick Co. v. Ash, 146 Ky., 253; Fraser & Foster v. Danner, 146 Ky., 76; Ky. Free Stone Co. v. McGee, 118 Ky., 306; Angel v. Jellico Coal Mining Co., 115 Ky., 728; Ohio Valley Ry. Co. v. McKinley, 17 R., 1028; Int. Coal Co. v. Fannon, 145 Ky., 198.

The rule, as now held in this jurisdiction, is that the duty of furnishing reasonably safe tools, materials and place to work is primarily on the master and that the

servant is under no duty to discover defects therein and, unless he knows of their existence or they are so patent and obvious that a person of his experience and understanding must have discovered them, he will not be precluded from recovery.

This case is not therefore one to which the doctrine of assumed risk can be applied, but one in which the law imposed upon appellant, as master, the primary duty to use ordinary care to furnish appellee as its servant, with tools and appliances reasonably safe for his use in performing the work required of him. The law imposed upon appellee no duty of inspection and he was not required to use ordinary care to ascertain whether the ladder furnished him by appellant was reasonably safe for use. He had the right to presume, when the ladder was furnished him, that such of appellant's servants as were charged with that duty, had seen to it that it was reasonably safe for his use, and, in using it, to rely upon their having performed such duty, unless it was, in fact, defective and the defect was so obvious it must have been discovered by him. As said in Pfisterer v. J. H. Peter & Co., *supra*, quoting with approval from L. & N. R. R. Co. v. Foley, *supra*:

"The limit of inquiry in such a case as this is whether, as a matter of fact, the employe did before exposing himself to danger, know the machinery or implements causing the injury to be defective. The rule, of course, does not apply where the examination and inspection is in line of the employer's duty."

The instructions should have been made to conform to the foregoing rule. Instruction No. 3 is also defective, in that, after defining the care required of appellant as to furnishing appellee with reasonably safe appliances to do the work, for which he was employed, it proceeds as follows:

"And unless the jury believe from the evidence that the defendant or those employed by it negligently failed to so furnish the plaintiff with a ladder that was reasonably safe and secure, the jury should find for the plaintiff."

This instruction authorized a verdict for appellee, *unless appellant negligently failed to* furnish appellee a ladder reasonably safe for use; i. e., if he *did not negligently fail* to do so; whereas other instructions authorized a verdict for appellee if appellant *did negligently*

*fail* to furnish him a ladder reasonably safe for use. Substitution of the word "if" for "unless," or the word, "defendant" for "plaintiff" would have corrected the error in the instruction referred to. Subsequent parts of the instruction fail to cure this defect, as they bear alone on the measure of care required of appellee in using the ladder. In addition to the error mentioned, the instruction was involved, misleading and necessarily prejudicial to appellant.

There was no error in the court's refusal of the instructions offered by appellant. Except one, practically all that the refused instructions contained was embraced in those given by the court. The one instruction referred to is in the words as follows:

"The jury are instructed to find for the defendant unless they believe from the evidence that the ladder upon which the plaintiff was working at the time of the accident broke; and that by reason of the breaking of the said ladder the plaintiff fell therefrom and sustained the injuries of which he complained."

In the view of the case entertained by appellant's counsel this instruction would, in effect, have directed a verdict for appellant. This view of the case rests upon the theory, that although it was alleged in the petition that appellee's fall and injury were caused by the breaking of the ladder, as it appeared from the evidence that the ladder did not in fact break, but came apart at the top by reason of the loss of the bolts from the iron hinges, or one of them, which connected the sides of the ladder, this was such a variance between the allegation and proof as would prevent a recovery. We disagree with this conclusion, the variance was not material. Whether the ladder came apart from the giving away of one of the hinges or from the breaking of one of the rounds that held it together, does not matter; it was sufficient that it came apart and in that sense broke and caused appellee to fall and fracture his leg. This was a breaking of the ladder in the meaning of the averment of the petition and in law, as well. Therefore, the above instruction was properly refused by the court.

It is earnestly insisted by counsel for appellant that the court erred in refusing to submit to the jury and require of them answers to certain questions set out in the bill of exceptions, by which it was attempted to segregate the several issues of face involved in the decision of the

case. We find no error in this ruling. The provisions of section 327, Civil Code, permitting special verdicts have been repealed by the amendment of May 15th, 1886, which provides:

"So much of chapter 2, title 9 of the Civil Code of practice as provides for a special general or a special verdict be and the same is hereby repealed, provided that the court in its discretion may direct the jury to find a separate-general verdict."

It will be observed that the amendment gives the court the discretion to direct or refuse a separate-general verdict. This question was up for consideration in Jones & Co. v. Moore, 30 R., 603, 99 S. W., 286. In the opinion it is said:

"Appellant moved the court to direct the jury to find a separate-general verdict, which was overruled. Code, Civil Practice, section 327 provides that, 'unless otherwise directed, the jury may find a general, or a general and separate-general verdict, or a separate-general verdict, but the court may without motion, or upon motion of a party shall, direct the jury to find a separate-general verdict as to any issue.' But by the amendment of May 15, 1886, it is provided: 'So much of chapter 2, title 9, of the Civil Code of Practice as authorizes and provides for a separate-general or a special verdict be, and the same is hereby repealed: provided; that the court in its discretion may direct the jury to find a separate-general verdict.' The meaning of the expression 'separate-general verdict' is that the verdict is separate as to the particular issue as distinguished from any other issue in the case and general as to the particular issue. It was intended to apply in cases where there is more than one issue. * * * But where there is only one issue there is no place for the practice of submitting to the jury interrogatories for a 'separate-general verdict,' and there was consequently no abuse of discretion by the trial court in overruling the motion in this case. Witty v. C. & O. Ry. Co., 83 Ky., 21."

The interrogatories which appellant asked to be submitted to the jury would but confuse the issues of fact, which are so few and clearly defined, that there will be no difficulty in the jury's comprehending them under such general instructions as might properly be given in the case. Therefore, the refusal of the court to require the findings of fact asked by appellant was not an abuse of its discretion.

As the case will be retried, we will not pass on appellant's contention that the verdict is excessive. There is quite a contrariety of evidence as to whether the second breaking of appellee's leg was the proximate cause of its amputation. Dr. Vance, who performed the operation, seemed to be of opinion that the amputation was rendered necessary by the third fracture. It is, however, claimed by appellee that the second fracture caused the amputation, and he and others so testified in his behalf. Manifestly, neither the amputation of the leg nor the suffering thereby caused appellee should enter into the jury's estimate of damages, if the second fracture of the leg was not the proximate cause of the amputation. As there was, however, evidence on both sides of this question, it was properly left to the decision of the jury.

On another trial of the case the court will submit it to the jury upon the following instructions:

(1) The jury are instructed that it was the duty of the defendant, or its servants having the matter in charge, to use ordinary care to provide plaintiff with a ladder reasonably safe for use in the work of installing and taking out telephones in its service; and if the jury believe from the evidence that defendant, or its servants having the matter in charge, negligently provided plaintiff with a ladder which was defective and not reasonably safe for use in such work, and that the ladder, while being used by plaintiff, by reason of its defective condition, if such was its condition, broke or came apart and thereby caused plaintiff to fall to the ground and break his leg, they should find for the plaintiff the damages he sustained thereby, unless they believe from the evidence that at the time of receiving his injuries plaintiff knew of the defective condition of the ladder and that it was not reasonably safe for use, if such was its condition, or its defective and unsafe condition was so patent or obvious as to be seen by or known to a person of his experience and understanding in time to have prevented his injuries; in which latter event they should find for the defendant.

(2) If the jury find for plaintiff, they should allow him such a sum in damages as they may believe from the evidence will reasonably compensate him for his physical and mental sufferings, if any of either, for the permanent impairment, if any, of his ability to earn money, not to exceed in respect to these items $10,000.00; and also such expenses, if any, as he reasonably incurred for surgical.

treatment, not to exceed $500,00, that may have directly resulted from and been caused by the negligence if any of the defendants complained of. But the damages, if any, are awarded plaintiff, should not exceed, altogether, $10,500.00, the amount claimed in the petition.

(3) If the jury believe from the evidence that plaintiff at the time and in the matter of receiving his injuries, was himself guilty of negligence, and that such negligence, if any, so contributed to his injuries, that but for same, he would not have been injured, they should find for the defendant.

(4) If the jury find for plaintiff, they should not allow him anything by way of damages for any sufferings, physical or mental, or impairment of his ability to earn money, or expense incurred for surgical treatment, caused alone by the first or third breaking of his leg. Nor should they allow him any damages for the amputation of his leg following its third breaking, unless they believe from the evidence that such amputation was the direct and proximate result of the second breaking of his leg caused by his fall from the ladder, if he did so fall.

(5) Ordinary care, as used in the instructions, is such care as is or would be used by an ordinarily prudent person under circumstances similar to those proved in this case. Negligence is a failure to exercise ordinary care.

For the reasons indicated, the judgment is reversed and cause remanded for a new trial consistent with the opinion.