## West Kentucky Coal Company v. Key.

(Decided December 4, 1917.)

## Appeal from Webster Circuit Court.

1. Removal of Causes—Fraudulent Joinders—Sufficiency of Petition.
—A removal petition which is in effect a mere denial in both a
negative and affirmative form of the allegations upon which the
liability of the resident defendant was rested, accompanied by the
statement that the joinder was fraudulent, and which does not
state facts sufficient to compel the conclusion that the joinder
was without right and made in bad faith, is insufficient to au-
thorize a removal.

2. Removal of Causes—Filing Second Petition—Effect.—A removal
based on a second removal petition is properly denied where the
second petition contains nothing more than a mere amplification
of the allegations of the first removal petition, and stated no
facts occurring subsequently to the filing of the first petition that
in anywise changed the status of the parties as it then existed.

3. Removal of Causes—Right to Remove—Effect of Verdict in Favor
of Local Defendant.—Where, after a petition for removal has
been properly denied, there is a trial on the merits and the evi-
dence of the negligence of the local defendant is sufficient to
take the case to the jury and to sustain a verdict had one been
returned against him, a finding of the jury in favor of the local
defendant will not operate to make the cause then removable and
thereby enable the other defendant to prevent plaintiff from tak-
ing a verdict against it.

4. Master and Servant—Injuries to Servant—Res Ipsa Loquitur.—
While the doctrine of res ipsa loquitur does not apply with the
same strictness to a master and servant as to a carrier and pas-
senger, yet where the accident results from defective conditions
which can be explained upon no reasonable hypothesis other than
negligence, very slight circumstances, independent of the ac-
cident itself, tending to show negligence on the part of the mas-
ter, will be sufficient to take the case to the jury.

5. Master and Servant—Injuries to Servant—Negligence—Question
for Jury.—In a servant's action for personal injuries, evidence of
the master's negligence held to make a question for the jury.

6. Master and Servant—Safe Appliances—Duty of Master—The duty
of the master to use the utmost care and skill to furnish reason-
ably safe electrical appliances, applies to their construction as
well as their maintenance.

7. Trial—Injuries to Servant—Instructions.—In submitting the issue
of the master's failure to use the utmost care and skill to furnish
the servant reasonably safe electrical appliances, the court may
instruct the jury that it was the duty of the master to use the
utmost care and skill in the construction, management, and main-
tenance of such appliances, and that if they believed from the
evidence that the master negligently failed to perform any of said

duties, and by reason thereof the appliances were not reasonably safe and plaintiff was thereby injured, they should find for the plaintiff; or the court may instruct the jury that if they believed from the evidence that the appliances were not safe, and such unsafe condition, if any, was known to the master or could have been known to him by the exercise of the utmost care and skill, and by reason of such unsafe condition, if any, plaintiff was injured, they should find for the plaintiff.

8. Trial—Injuries to Servant—Instructions.—In a servant's action for personal injuries caused by defective electrical appliances, the omission from one of the instructions of the issue of defendant's actual or constructive knowledge of the defective condition, even if technically incorrect, was cured by another instruction which told the jury to find for the defendant if they believed from the evidence that the trolly wire was caused to strike plaintiff because of latent defects, and that the defendant could not have known thereof by the exercise of utmost care.

9. Master and Servant—Electricity—Duty of Master—Instructions.—An instruction defining "utmost care and skill" as used in instructions respecting the duty of the master to construct and maintain electrical appliances for the use of a servant as "the highest degree of care and skill known which may be used under the same or similar circumstances," is proper.

10. Master and Servant—Argument of Counsel—Misconduct.—In a servant's action for personal injuries caused by the breaking of a trolly wire, counsel for plaintiff was not guilty of misconduct in stating that the broken wire was taken to the company's office, and in asking the company's superintendent, who was present at the trial, why he did not bring the wire and let the jury look at it, even though no witness testified that the wire was taken to the company's office, since the wire, whether taken to the office or not, was under the company's control, and in view of the company's claim that the wire broke from a hidden defect, it was within the limits of legitimate argument to comment on the company's failure to produce the wire at the trial, as being a circumstance tending to rebut such claim.

WM. J. COX, HUNT & BENNETT, JAMES E. COLEMAN and COX & GRAYOT for appellant.

RUTH McNEAILL, BOURLAND & BLACKWELL and LAFFOON & WADDILL for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, Clarence Key, brought this suit against the West Kentucky Coal Company and J. W. Ellswick, its electrician, to recover damages for personal injuries. The jury found in favor of Ellswick, but returned a verdict against the coal company for $10,000.00. The coal company appeals.

According to the evidence for plaintiff, he was nineteen years old at the time of the accident and was earning about two (2) dollars per day. He was engaged as trip rider on an electric motor used to propel cars in and out of the company's mine. He was seated on the front of the motor, and it was fourteen feet from his position to that of the motorman in the rear. The motor was a twenty ton Westinghouse machine, and was pulling about fifteen cars up grade at from six to ten miles an hour. The motor was propelled by means of a pole and wheel attached to a trolly wire, which was charged with sufficient voltage to be dangerous to life and limb. At the steel casing at the mouth of the mine was a cut-out. Ten or fifteen feet therefrom was a hanger used to support the wire. Between the steel casing and the first hanger was a cable containing feed wires fastened to the trolly wire. As the motor came out of the mine, the trolly wire broke at the cut-out and fell on the cars in the rear of the motor. That part of the wire beyond the first hanger sagged and came in contact with plaintiff and the motor, thus causing plaintiff to be thrown in front of the motor and to be run over. One of his legs had to be amputated and the other was so severely injured that it will not bear any weight. The trolly wire had been in constant use for several years. Early on the morning of the accident, which took place at 4 p. m., one of the witnesses noticed a bright spot right by the cut-out where the wire broke, and the wire looked like it might pull into at that point. The first hanger was a Jewell swing, which had been in use for four or five years, and if this hanger had been in proper condition, it would not have permitted the trolly wire to sag at the place where it did sag. It was also shown that J. W. Ellswick was the electrician in charge of the electrical appliances. While it does not appear that he actually installed the trolly wire, it does appear that he worked on it and frequently inspected it.

According to the evidence for the defendant, the trolly wire and hangers were standard appliances and such as were ordinarily used. There was no visible defect in the wire at the place where it broke and nothing to indicate that it would break. On the contrary, it broke from some hidden defect which could not have been discovered.

The first error assigned for a reversal is the refusal of the trial court to grant defendant's petition for a removal to the Federal Court for the Western District of Kentucky. The original suit was filed on June 16, 1915,

in the Webster circuit court against the West Kentucky Coal Company and J. W. Ellswick, its electrician. Key and Ellswick are citizens of Kentucky, while the coal company is a citizen of New Jersey by virtue of its incorporation in that state. In proper time the coal company filed its petition and bond for removal on the ground of separable controversy and collusive joinder of parties to prevent removal. The petition for removal was denied by the state court, but further control over the matter was reserved. Afterwards a transcript of the record was filed in the Federal Court for the Western District of Kentucky, and the plaintiff below moved to remand the action to the state court. On November 29, 1915, the motion to remand was sustained. Subsequently the case was set for trial in the state court, on the 11th day of April, 1916. On that day and before the trial was begun, the coal company filed another petition for removal, stating therein, but more in detail, the same general grounds theretofore stated in the original petition for removal, and tendered another bond, which was also approved by the state court. On April 12, 1916, the state court denied the second petition for removal. On April 13th the trial began. At the conclusion of the plaintiff's evidence, the motion to remove was renewed. The trial resulted in a verdict for plaintiff against the coal company alone, and judgment was entered accordingly. The action as to Ellswick was then dismissed. Thereupon the coal company re-entered its motion to remove the case. This motion was overruled. The coal company again filed a transcript of the record in the Federal Court. Plaintiff's motion to remand was again sustained by the Federal Court. Key, et al., v. West Kentucky Coal Company, et al., 237 Fed. Rep. 258. There can be no doubt that the petition, filed by plaintiff below, stated a joint cause of action against both Ellswick and the coal company. The original petition for removal was in effect a mere denial in both a negative and affirmative form of the allegations upon which the liability of the resident defendant was rested, accompanied by the statement that the joinder was fraudulent, and did not state facts sufficient to compel the conclusion that the joinder was without right and made in bad faith. Chesapeake & Ohio R. R. Co. v. Rockrell, 232 U. S. 146, 58 L. Ed. 544. It follows that the original petition for removal was properly denied. The second petition for removal was also properly denied, not only because it contained nothing more than a mere amplifi-

cation of the allegations of the first petition for removal, but also because it stated no facts occurring subsequently to the filing of the first petition that in anywise changed the status of the parties as it then existed. But it is insisted that the subsequent motion to remove should have been sustained both because of the insufficiency of the evidence as to the liability of the local defendant, and because of the jury's finding in his favor. In reply to the first proposition, it is sufficient to say that the local defendant's motion for a peremptory instruction was properly overruled. In support of the second proposition, it is argued that the finding of the jury in favor of the local defendant conclusively established appellant's right to the removal. Here there was a trial upon the merits, and the evidence of Ellswick's negligence was not only sufficient to take the case to the jury, but to sustain a verdict against him, had one been returned by the jury. The mere fact that the jury saw fit under these circumstances to disregard this evidence and find in his favor, cannot be regarded as conclusive of a fraudulent joinder. The question of fraudulent joinder had then been properly disposed of and the right to remove was not contingent on the aspect the case may have assumed on the facts developed on the merits of the issues tried. It follows that the trial court rightly held that the verdict in favor of Ellswick did not operate to make the case then removable, and thereby to enable the coal company to prevent plaintiff from taking a verdict against it. Whitcomb v. Smithson, 175 U. S. 635, 44 L. Ed. 303; Kansas City Suburban Ry. Co. v. Hermon, 187 U. S. 63, 47 L. Ed. 63; Haynes' Admr. v. C., N. O. & T. P. R. R. Co., 145 Ky. 208, 140 S. W. 176; I. C. R. Co. v. Outland's Admx., 160 Ky. 714, 170 S. W. 48.

2. It is next insisted that appellant's motion for a peremptory instruction should have been sustained. While it is true that the doctrine of *res ipsa loquitur* applies in a case of master and servant in a more restricted sense than in a case of carrier and passenger, and the mere breaking of a piece of machinery is not therefore sufficient evidence of negligence to make out a *prima facie* case against the master, yet where the accident results from defective conditions which can be explained upon no reasonable hypothesis other than negligence, very slight circumstances independent of the accident itself, which tend to show negligence on the part of the master, will be sufficient to take the case to the jury. Louisville & Nashville R. R. Co. v. Allen's Admr., 174 Ky. 736, 192

S. W. 863; Baltimore & Ohio R. R. Co. v. Smith, 169 Ky. 593, 184 S. W. 1108. Here the accident resulted from the breaking of the wire and its sagging beyond the first hanger. The evidence shows that the wire and hanger had been in use for many years; that there was a bright spot near the place where the wire broke, which indicated a worn condition, and if the hanger had been properly adjusted, the sagging would not have occurred. While the defendant's employes testified that they frequently observed the trolly wire and hanger and saw no defect therein, it does not appear that they ever made any minute examination or inspection of either, or that they ever subjected either to any test. This is not a case, therefore, where a new wire suddenly broke or a new hanger suddenly gave way. It is a case where both the wire and hanger were subjected for many years to constant friction from the trolly wheel. In view of this fact and of the further fact that there was evidence tending to show that the worn condition of the wire was observable, and that if the hanger had been in proper condition, it would not have permitted the wire to sag, the jury had the right to conclude that the accident resulted from defective conditions which the coal company could have discovered in time to prevent the accident, had it used the utmost care to inspect and test the apparatus. Under these circumstances we conclude that the evidence of the coal company's negligence was sufficient to take the case to the jury and sustain the verdict.

3. We find no prejudicial error in the omission and rejection of evidence.

4. By instruction No. 1, the court told the jury in substance that it was the duty of the company if its wires carried a deadly or dangerous current of electricity, to use the utmost care and skill in the construction, management, and maintenance thereof, and that it was its further duty to exercise and use the utmost care and skill to properly support said wires and to keep same in repair and that if they believed from the evidence that the company failed to observe and perform said duties, or any of them, and by reason of such failure the trolly wire and its hangers were not reasonably safe and that such unsafe condition, if any, was not known to plaintiff, or was not so obvious that he should have known thereof by ordinary care in the discharge of his duties, and that by reason of such unsafe condition, if any, plaintiff

was injured while exercising ordinary care for his own safety, they should find for plaintiff.

By instruction No. 2, the jury were told that the coal company had the right to leave exposed and uninsulated such points of its wires as were reasonably necessary to conduct its business, and that if they believed from the evidence that the part of said wire exposed and the current carried therein were reasonably necessary for the conduct of their business, and if they further believed from the evidence that the company used the care defined in the instructions, they should find for the defendant.

By instruction No. 3, the jury were told that if they believed from the evidence that the trolly wire was caused to strike plaintiff because of latent defects and the defendant could not have known thereof by the utmost care, they should find for the defendant.

By instruction No. 4, the court defined utmost care and skill as "the highest degree of care and skill known, which may be used in the same or similar circumstances."

The first complaint of instruction No. 1, is that it imposed on the company the duty to exercise the utmost care and skill, not only in the management and maintenance of its wires, but in their construction. Clearly this complaint is without merits, for the proper construction of such wires is as necessary to their safety as their maintenance after their construction.

Another complaint of instruction No. 1, is that it failed to require the jury to believe that the unsafe condition of the wire and hanger was known to the company, or could have been known to it by the exercise of the utmost care. In reply to this contention, it is sufficient to say that in submitting the issue of negligence in failing to furnish reasonably safe appliances, the court may employ either the language of the given instruction, or that which the company claims should have been used. East Tennessee Tel. Company v. Jeffrey, 153 Ky. 133, 157 S. W. 3; Lexington Utilities Co. v. Parker's Admx., 166 Ky. 81, 178 S. W. 1173; Ross-Paris Co. v. Brown, 121 Ky. 821, 90 S. W. 568. Not only is this true but the omission of the issue of actual or constructive knowledge from the given instruction, even if technically incorrect, was cured by instruction No. 3, which told the jury to find for the defendant if they

believed from the evidence that the trolly wire was caused to strike plaintiff because of latent defects, and that the defendant could not have known thereof by the exercise of the utmost care.

The definition of utmost care and skill is also criticised, but the identical definition has been approved in a number of cases. Bowling Green Gas Light Co. v. Dean's Exor., 142 Ky. 678, 134 S. W. 115; Lexington Utilities Co. v. Parker's Admx., *supra;* Smith's Admx. v. Middlesboro & Co., 164 Ky. 44, 174 S. W. 773; Mangen's Admr. v. Louisville Electric Light Co., 122 Ky. 476, 91 S. W. 703; McLaughlin v. Louisville Electric Light Co., 100 Ky. 173, 37 S. W. 851; Paducah Ry. Co. v. Bell, 27 Ky. L. R. 428, 85 S. W. 216; Overall v. Louisville Electric Light Co., 20 Ky. L. R. 759, 47 S. W. 442. In discussing this question in Bowling Green Gas Light Co. v. Dean's Admr., *supra,* the court said: "Nor is this degree of care an unreasonable requirement. When a company is using in the conduct of its business an agency so subtle and deadly, as electricity, in places where persons have the right to go and be, the highest degree of skill and care attainable should be exercised to protect them from danger."

5. Lastly it is insisted that counsel for appellee was guilty of misconduct in his argument to the jury. It appears that counsel after referring to the fact that a witness stated that the old wire broke and in a few minutes it was taken to the company's office then turned to the company's superintendent, who was present and said to him, "Why didn't you bring that old wire up here and let the jury look at it?" The chief complaint of this argument is that there was no evidence to the effect that the broken wire was taken to the company's office. While there may have been no evidence to support this statement, it is nevertheless true that the broken wire, whether taken to the company's office or not, was on its premises and under its control. In view of the company's claim that the wire broke from a hidden defect, it was within the limits of legitimate argument to comment on the company's failure to produce the wire at the trial, as being a circumstance tending to rebut such claim.

Judgment affirmed.