## Buskirk, et al. v. Caudill, Administrator.

(Decided December 20, 1918.)

### Appeal from Breathitt Circuit Court.

1. Master and Servant—Fellow Servants—Relation of Superior and Inferior Servants.—Under the master and servant rule prevailing in this state, an inferior employe is not a fellow servant of a superior employe.

2. Master and Servant—Injuries to Servant—Death—Negligence of Superior Servant.—The master is not liable for a mere injury to an inferior employe caused by the negligence of a superior employe, unless the negligence be gross, but if death result the master is liable even though it was caused by the ordinary negligence of a superior servant.

3. Master and Servant—Death of Servant—Negligence of Superior Servant—Evidence—Sufficiency.—In an action against the master for the death of an inferior servant, alleged to have been caused by the negligence of a superior servant, evidence examined and held sufficient to make it a question for the jury whether the

servant causing the injury was superior in authority to the deceased.

4.  Master and Servant—Death of Inferior Servant—Negligence of Superior Servant—Evidence—Sufficiency.—In an action against the master for the death of an inferior servant, alleged to have been caused by the negligence of a superior servant, evidence examined and the question of negligence held for the jury.

5.  Removal of Causes—Negligence of Local Defendant—Insufficiency of Evidence.—Where the trial court correctly ruled that the evidence of the local defendant's negligence was sufficient to take the case to the jury, the non-resident defendants were not entitled to a removal of the cause to the federal court on the ground that no case was made out against the local defendant.

6.  Removal of Causes—Verdict—Collusive Joinder.—A verdict in favor of a local defendant alleged to have been fraudulently joined with non-resident defendants, is not conclusive of a fraudulent joinder.

7.  Removal of Causes—Separable Controversy—Frauduent Joinder.— The motive of plaintiff in joining a resident employe with his non-resident employers in a negligence suit is not material on the question of removal to a federal court, where a joint cause of action against all the defendants was properly pleaded and supported by sufficient evidence to make their joint liability a question for the jury.

CHESTER GOURLEY, EDWARD C. O'REAR and J. C. JONES for appellants.

E. E. HOGG and J. M. McDANIEL for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Overruling petition for rehearing.

Under the master and servant rule prevailing in this state, an inferior employe is not a fellow servant of a superior employe, L. & N. R. R. Co. v. Brown, 127 Ky. 732, 106 S. W. 795, 13 L. R. A. (N. S.) 1135; Milton's Admr. v. Frankfort & V. Traction Co., 139 Ky. 53, 129 S. W. 322, and while the master is not liable for a mere injury to an inferior employe, caused by the negligence of a superior employe, unless the negligence of the latter be gross, yet if death result the master is liable even though it was caused by the ordinary negligence of a superior servant. Consolidation Coal Co. v. Baldridge, 166 Ky. 187, 179 S. W. 18; Linck v. L. & N. R. R. Co., 107 Ky. 370, 54 S. W. 184. Whether an employe is superior in authority to another depends on whether the other is subject to his directions and control. Not only was there other testimony to the same effect, but Brad Hoover

himself testified that he was the manager or loader and that Caudill had no particular duties to perform except to do what the manager or loader told him to do. While there was other evidence to the contrary, it is clear that this evidence was sufficient to make it a question for the jury whether Hoover was superior in authority to Caudill.

Coming to the question of Hoover's negligence, we find Hoover himself testifying as follows:

"Q. Do you know how came that switch to be open so that cars came into the switch right where the loader was? A. Yes, sir. Q. How came it open? A. When we went back we taken water first and went back into the switch, he was on top of the cab taking the hose up and I goes on up to the switch. When I come out of there with the bar, by that time he was off the cab and I had the bar, and I says, 'Joe, put your hand on this bar and hold it until I go and jam the nut down.' Q. While he was doing that the train came in and struck the loader? A. Yes, sir. Q. How happened it that you did not have the switch closed when you came in? A. Slipped my mind, never thought of the switch, because I was in such a hurry to get the work done before the train came back, I never even thought of it when I heard the train whistle leaving Spicewood, I never thought of the switch once. Q. Whose duty was it to see that the switch was closed? A. It should have been my duty in the first place to asked him to have done it; but it just slipped my mind, I was in such a hurry I never thought once of telling him to do it. Of course, if we had been on the main line the switch would have been left like the train left it, but I wanted to do this work before the train come back so I wouldn't delay the train any."

While it is true that Hoover subsequently stated that he did not know that the switch had not been thrown because he did not pay any attention to it on account of his being in such a hurry, it is clear from his evidence, considered as a whole, that he knew that the switch had been opened, that neither he nor Caudill had closed it, and that he further knew that the train would return in a few minutes. Instead of closing the switch himself, or directing Caudill to do it, he proceeded with the work which he was in a hurry to do, and by directing Caudill to go under the loader, put it out of his power to close the switch. Though in another connection he states that

it was the duty of Caudill to close the switch, his evidence considered as a whole tends merely to show that Caudill was not charged with this duty unless directed to perform it. It will thus be seen that there was substantial evidence to the effect that Hoover was negligent in not closing the switch himself or in not directing Caudill to do it, and that being true, his negligence and the consequent liability of his employers were questions for the jury.

Nor can we say, as a matter of law, that Caudill was himself guilty of contributory negligence. If it had been his duty to close the switch without being directed to do so, there might be some merit in the contention, but if it be true, as the testimony of plaintiff tends to show, that Caudill was under no duty to close the switch unless directed to do so by Hoover, there is no basis for the claim that he was guilty of contributory negligence.

The foregoing conclusion renders unnecessary any extended discussion of the claim that the cause was removable to the federal court, because no case was made out against Hoover, the local defendant. In our opinion, the trial court correctly ruled that there was sufficient evidence of negligence on the part of Hoover to take the case to the jury, and that being true, there is no merit in the contention that no case was made out against Hoover. Of course, the mere fact that the jury saw fit to disregard this evidence and to find in Hoover's favor cannot be regarded as conclusive of a fraudulent joinder. West Kentucky Coal Co. v. Key, 178 Ky. 220, 198 S. W. 724; Illinois Cent. R. Co. v. Outland's Admx., 160 Ky. 714, 170 S. W. 48.

But in this connection it is insisted that plaintiff's own evidence shows that the joinder of Hoover, the local defendant, with the non-resident defendants was fraudulent. In support of this contention our attention has been called to the following evidence given by plaintiff:

"Q. How long have you known Brad Hoover? A. Oh, I have knowed him for three or four years. Q. Did you know him at the time you brought this suit? A. Yes, sir. Q. Were you present when he gave his deposition in this case, a few days ago? A. Yes, sir. Q. He gave his deposition for you in the case, didn't he—for your side of the case? A. I suppose he did. Q. You took his deposition didn't you A. Me? Q. Yes. A. My attorney did. Q. Your attorney did? A. Yes, sir. Q. How did Brad

Hoover happen to be here at that time? A. I had him summoned. Q. You had him brought here? A. Yes, sir. Q. To testify for you on this trial? A. Yes. Q. You are seeking in this case a judgment against him, A. Against Brad? Q. Yes? Counsel for plaintiff: 'Your honor, please, the record shows what he is seeking.' Counsel for defendants: 'This is a different proposition.' Counsel for plaintiff: 'The record shows he is seeking a judgment against all of them; the Kentucky River Hardwood Company, the Huntington Contracting Company and Brad Hoover too.' Court: 'He may answer.' Q. I say, are you trying to get a judgment against him in this case? A. I am trying to get a judgment against the Kentucky Hardwood Company, and then the way the suit is brought—— Q. Are you trying to get a judgment against Brad Hoover in this case? Just answer my question. Counsel for plaintiff: 'I don't think that is competent, because this witness don't know what the record contains; the record shows what he is trying to do; I submit that it is not competent to show—bring out any evidence which the pleadings show—the pleadings show all of them.' Court: 'Objection overruled.' A Why, I don't know as I was trying to get ary—I can't answer. Q. You don't want any judgment against Brad Hoover, do you? A. Why, I never sued Brad Hoover, did I? Q. If you sued him you don't know it, do you? A. I can't understand you. Q. You don't want any judgment against Brad Hoover, do you? Counsel for plaintiff: 'We object to that. This man is suing in a trust capacity; he is not familiar with the'—— Q. You don't want any judgment against Brad Hoover, do you? A. Why, I don't suppose that I ever sued Brad Hoover. Q. If you did sue him, you don't want any judgment against him, do you? Counsel for plaintiff: 'We object to that question.' A. I shore can't answer it—I don't know—I certain don't. Counsel for defendants: 'He knows what he wants.' Counsel for plaintiff: 'He wants pay for his son's death.' A. That is what I want. Court: 'He insists he can't answer, and, gentlemen, the fact that litigants don't always know their rights in a case, or as far as the litigant is concerned, know who is liable, if he has a grievance, or whoever he wants to charge.' Q. Now, Mr. Caudill, you don't desire any judgment now against Brad Hoover, do you? Counsel for plaintiff: 'We object.' Court: 'Overruled.' 'Plaintiff excepts.' A. Why

shore, I don't expect no judgment from Brad Hoover; he ain't the man I want a judgment from. Q. And you don't want any from him? A. Why shore, I never sued Brad Hoover; I sued Mr. Croft and Mr. Buskirk; there is the men I want a judgment against."

The foregoing, however, is not all the evidence on the question. Immediately following the above testimony plaintiff was asked and answered the following questions:

"Q. And the Huntington Contracting Company? A. Yes. Q. And that is all you want judgment against? A. Why, I want a judgment against the whole parties."

Not only so, but on his re-direct examination plaintiff testified as follows:

"Q. You are wanting pay for your son's death against all those who caused his death? A. Sure. Q. But you don't know who is responsible for it? A. No, sir, I don't. Q. But you are wanting them to pay because of their negligence? A. Shore, that it what I am working for."

Viewing this evidence as a whole, it is doubtful if it shows anything more than plaintiff's ignorance of his legal rights, but if we go further and assume that it shows an improper motive in joining the non-resident defendants with the local defendant, such motive cannot be regarded as material on the question of removal, in view of the fact that a joint cause of action against all the defendants was properly pleaded and supported by sufficient evidence to make the question of their joint liability one for the jury. Chicago R. I. & P. R. Co. v. Whiteaker, 239 U. S. 421, 604 L. Ed. 360.

Upon a reconsideration of the questions involved, we see no reason to change the conclusions reached in our original opinion Wherefore, the petition for rehearing is overruled.