## West Kentucky Coal Co. et al. v. Hazel's Adm'x.

June 6, 1939.

M. L. Blackwell, Judge.

Drury & Drury and Withers & Lisman for appellants.

J. M. Rayburn and Pentecost & Dorsey for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

John William Hazel, an employee of the West Kentucky Coal Company, was killed in an accident which occurred in the course of his employment, and his administratrix brought this action against the company and two of its foremen and agents to recover damages for his death alleged to have been caused by the defendants' failure to furnish him a safe place in which to work. The West Kentucky Coal Company had not elected to operate under the provisions of the Workmen's Compensation Act, Kentucky Statutes, Section 4880 et seq., though eligible to do so. Upon the trial of the case the jury returned a verdict in favor of the plaintiff for the sum of $6,000 and the defendants have appealed. They insist that the court should have sustained their motion for a peremptory instruction; that the court erred in giving and refusing instructions; and that appellee's attorney was guilty of improper conduct in his closing argument to the jury.

Hazel was killed November 2, 1935, when he came in contact with an electric wire in the West Kentucky Coal Company's mine. He was 31 years of age, in good health, and had a life expectancy of more than 29 years. At the time his injuries were received, he and a fellow workman were engaged in shoving or pushing a loaded mine car from main entry W—21 onto a track leading into an air course. According to the proof for appellee, the track in the air course was used to spot empty and loaded cars until the empty cars could be taken to various rooms to be loaded and the loaded cars could be taken out of the mine when the motor made a run to the shaft. The proof for appellants tended to show that the track in the air course was used only for storing empty cars, but witnesses for appellee testified that it was also used regularly for storing loaded cars. At the time he was injured, Hazel had brought a loaded car from a room in the mine, and was in the act of pushing it onto the air course track. He had his back to the car with his shoulder and body against it. While in this position his

left shoulder came in contact with an electric wire suspended from the roof of the entry, and he was killed almost instantly. He was in the main entry about 4 feet from the mouth of the air course. The distance from the roof of the mine to the floor at this point was about 4½ feet, and the wire with which Hazel came in contact was strung through hangers about 6 inches below the roof. According to appellee's witnesses, the wire was out of the hanger at the point of the accident, and was sagging several inches below the hanger and so was 12 to 18 inches below the roof and unprotected. The power line used by the motors in traveling along main entry W—21 was on the opposite side of the entry and was channeled in the roof and protected by boards, as required by Section 2739-33 of the Kentucky Statutes, which reads in part:

"On all haulage roads, landings and partings, where men are required to regularly work or pass under trolley or other bare power wires which are placed less than six and one-half feet above top of rail, a suitable protection shall be provided. This protection shall consist of channeling the roof, placing boards along the wires, which shall extend below it, or the use of other approved devices that afford protection."

It is appellants' contention that Hazel was at a place where he had no right to be at the time he was injured, and where men were not required to work or pass under the bare power line and therefore no duty was imposed on appellants to provide protection for employees of the company at the point of the accident. There was proof, however, that the track in the air course had been used constantly since its construction for the storage of both empty and loaded coal cars, and that on the occasion in question Hazel was directed by the appellant Joe Sheridan to switch the car onto the air course track. There was some proof that it was the custom and practice to place empty cars, but not loaded cars, on the air course track, but there was ample evidence that this practice extended to loaded cars also, and that Hazel was at a place where he had a right to be when he was killed. That being true, appellants were grossly negligent in permitting a wire carrying a high voltage of electricity to dangle from the roof less than 4 feet from the floor of the mine.

Appellants complain of instruction No. 1 because it

imposed upon the appellant company the duty to use the utmost care and skill in the construction and maintenance of its wires at a place where the decedent had a right to be in the performance of his duty. It is argued that a different measure of duty is required of the master in a case where the servant is injured at a place where he had a right to be from one where he is injured at a place where he was required to be. This court has made no such distinction in cases involving dangerous instrumentalities such as highly charged electric wires. Instruction No. 1 is substantially the same as the instruction approved in West Kentucky Coal Company v. Key, 178 Ky. 220, 198 S. W. 724.

Appellants complain of instruction No. 2 because it told the jury that if they believed from the evidence that in the proper and usual performance of their duties appellants' workmen were required to regularly work or pass under the trolley wire and the wire was suspended less than $6\frac{1}{2}$ feet above the top of the rail it was the duty of the company and its agents and servants in charge of the wire to provide a suitable protection therefor which should consist of channeling the roof, placing boards along the wire and extending below it, or some other approved device which would afford comparable protection. It is argued that the petition did not charge any violation of any statutory duty, and therefore it was error to instruct the jury that the kind of protection required was that prescribed by the statute. While the petition did not mention specifically the duties imposed by the statute, yet it alleged that the West Kentucky Coal Company erected and maintained in its mine an electric wire, and that said wire was erected and maintained in a dangerous and unsafe condition. The statute prescribes the manner in which electric wires in a mine must be erected and maintained, and we think, under the pleadings and proof, the instruction properly defined appellants' duty.

Appellants also complain because the court refused to give instruction A offered by them. This was an instruction on contributory negligence, and the company was deprived of this defense when it failed to elect to operate under the Workmen's Compensation Act. Instruction No. 4 given by the court told the jury if they believed from the evidence that the plaintiff's decedent voluntarily went to a place where the reasonably proper and customary performance of his duties did not require

him to go or to which the defendants would not, in view of the nature of his duties and the rules, customs, and usages in the mine, reasonably anticipate he would go in the performance of his duties and plaintiff's decedent met his death while at such place, then the defendants did not owe him the duties imposed by the other instructions. This fully presented appellants' theory of the case, and was all to which they were entitled.

Appellants complain of the argument of appellee's attorney, and insist that it was calculated to and did inflame the minds of the jury and was prejudicial. The argument was taken down by the official stenographer and transcribed, and the entire argument is before us. Like many arguments in such cases, it is not a model of fair and unimpassioned appeal to the reason of sensible men, but, in view of the evidence and the very modest verdict, it is obvious that the jury was not influenced by it. If, as claimed by appellants, it was the attorney's purpose to inflame the minds of the jury and influence them to return an unjust and exorbitant verdict, he signally failed in his efforts. During the argument a few objections were interposed, but apparently no rulings were made and no exceptions were taken. At the conclusion of the argument, counsel for appellants singled out several statements and asked that the jury be admonished not to consider them. The most objectionable of these was the following: "Let the jury rise up in its wrath and give to this plaintiff such a verdict that it will be a lesson to them." The court sustained an objection to this statement, and admonished the jury not to consider it. A few less objectionable statements were objected to and the objections were overruled, but no exceptions were taken. However, as heretofore stated, the verdict itself indicates the jury did not act under the influence of passion and prejudice, and, consequently, the argument could not have been prejudicial.

We find no error prejudicial to appellant's substantial rights, and the judgment is affirmed.