# PAULINE SPORNA v. JOHN KALINA, JR.[1]

August 28, 1931.

No. 28,432.

Snyder, Gale & Richards, for appellant.

Alphonse A. Tenner, Tautges, Wilder & McDonald, and John D. Greathouse, for respondent.

[1]Reported in 237 N. W. 841.

90

HOLT, J.

Defendant appeals from the order denying his motion in the alternative for judgment notwithstanding the verdict or a new trial.

Steve Sporna, plaintiff's intestate, a man of 57 years of age, while crossing Lowry avenue, going north on northeast Seventh street, Minneapolis, at about nine o'clock p. m. July 1, 1929, was hit by the right front bumper of defendant's car driven west on Lowry avenue. His legs were run over, fracturing both bones in each leg a short distance above the ankle. He was taken to a hospital for treatment, casts being placed on the legs. Half of the casts were taken off in the latter part of September and the other half on October 8, 1929. Thereafter the legs were bandaged so that the bandages could be removed and massage applied. He was taken to his home on October 27. In the middle of November the fractures had so far healed that the legs could bear his weight. After that he first used crutches, and in January he was directed to take some exercise outdoors, and toward the end of the month he walked around the house a few minutes every day, using a cane and discarding the crutches. In leaving and entering the house he made use of the back door, where there was only one step to the ground. He was assisted up and down this step. He walked "wobbly," slowly and carefully. He used a cane, moving around inside as well as outside. On January 30, 1930, in the evening, his wife heard him go to the kitchen; and, not hearing him return as soon as she expected, she went to investigate. She testified that the door to the basement was open, and that looking down she saw him, about the middle of the stairway, as his legs seemed to give away, causing him to fall to the basement floor, fracturing the skull, which caused death in a few minutes. This was the first time since his injury that he had attempted to go to the basement.

We think the record made defendant's negligence and the decedent's contributory negligence in the collision of July 1 jury questions, and no useful purpose would be served in referring to the testimony as to the way defendant drove and the decedent walked.

The real and decisive question in this case is: Does the evidence justify the jury in finding defendant's negligence of July 1, 1929, the proximate cause of Sporna's fatal fall downstairs January 30, 1930? In other words, did defendant's negligence create or set in motion a cause which, without any other intervening efficient cause, produced decedent's death? If plaintiff has a cause of action under the statute it accrued on the death of decedent, and such death must be proved to have resulted from the injuries inflicted by defendant's negligence of July 1, 1929. The interval between the negligent act and the death is not controlling. In Western Union Tel. Co. v. Preston (C. C. A.) 254 F. 229, ten years intervened. In the instant case the only injury Sporna sustained from defendant's negligence was a fracture of the bones of the legs. The fractures had united. True, the long disuse of the legs and perhaps sensitiveness from nerves imbedded in scar tissues made locomotion slow, wobbly, and painful on January 30, 1930. But he could walk with the aid of a cane, and before he opened the door to go down to the basement there was nothing in the injuries received seven months previously which in any human probability would cause death. It is readily seen that had death resulted from some disease developed from the injury or fractures there would have been causal connection traced to the negligence complained of. But suppose in this case the fractures would have healed so as to leave the use of the legs greatly impaired and because of such impairment the decedent, years after this injury, had fallen to his death or had met death because the impaired use of the legs did not enable him to evade an oncoming vehicle, could such death reasonably be traced or attributed to defendant's negligence of July 1, 1929? We think not. The negligence as the cause of death would be too indirect or remote.

In Scheffer v. W. C. V. M. & G. S. R. Co. 105 U. S. 249, 252, 26 L. ed. 1070, where negligence of the defendant in the operation of its train was alleged to have caused derailment and such injury to the mind and body of the plaintiff's intestate, a passenger, that in a frenzy resulting from his sufferings he took his life, the court held no cause of action was stated. In the opinion it is said [105 U. S. 252]:

"The argument is not sound which seeks to trace this immediate cause of death through the previous stages of mental aberration, physical suffering, and eight months' disease and medical treatment to the original accident on the railroad."

Raymond v. City of Haverhill, 168 Mass. 382, 47 N. E. 101; Daniels v. N. Y. N. H. & H. R. Co. 183 Mass. 393, 67 N. E. 424, 62 L. R. A. 751; Snow v. N. Y. N. H. & H. R. Co. 185 Mass. 321, 70 N. E. 205, are to the same effect. In the Raymond case, 168 Mass. 382, 47 N. E. 101, through the fault of the defendant the plaintiff's ankle was injured so that it was likely to turn and fail to support her. On October 9, 1894, nearly four months after the injury, in stepping from a chair to a settee, the ankle gave way and she fell, fracturing her leg. The court held there could be no recovery for the leg injury for it was not a direct and immediate result of the previous accident, saying [168 Mass. 383]:

"On October 9, 1894, she was not acting from any necessity caused by her previous injury, but acting independently and voluntarily, and as a result of her voluntary conduct she was again injured. A new and independent cause intervened between the original injury and the injury she received on October 9."

In the Daniels case, 183 Mass. 393, 395, 67 N. E. 424, 62 L. R. A. 751, which was for wrongful death, the plaintiff's intestate, a passenger on defendant's train, having been so injured, when the train, negligently operated, collided with another train, that meningitis resulted and affected his mind to the extent that he took his life, the trial court instructed that "if by reason of the disease produced by the injury the mind of Daniels was taken away so that his intelligence was gone, and he had not the power of rational volition" when he strangled himself, there could be a recovery. This the supreme court held too favorable to plaintiff on account of the use of the word "rational," the opinion being that so long as he acted with a purpose, even though from a disordered mind, his act should be deemed a new, independent and efficient cause of the death and not the original negligent act causing the original injury.

In the Snow case, 185 Mass. 321, 70 N. E. 205, where on December 16, 1899, in a collision of the defendant's train through its fault, the plaintiff, a passenger, was so injured as to be subject to spells of dizziness, and while standing in the sink at her home in 1903, she was attacked by such a spell and fell, breaking a wrist, the court, denying recovery for the wrist injury, said [185 Mass. 323]:

"The breaking of the wrist certainly was not the direct result of the collision. That caused or may have caused conditions which contributed to it, and but for whose existence it perhaps would not have happened. The breaking of the wrist was due not to the collision but to her conduct in getting up into the pantry sink to look at the leak in the water pipe, and was the result of voluntary and independent action on her part."

And so it must be said in the case at bar. The fractured bones did not cause the death. At most a condition was created by defendant's negligence which might expose to other injuries should plaintiff elect to take chances by attempting to walk up or downstairs before a complete cure was effected. Decedent voluntarily and without necessity undertook to walk down steep steps, where there was no handrail, and this with full knowledge of the infirmity in his legs. There was no unforeseen slipping of crutches, the use of which was necessitated by the original injury. To be sure, he was instructed by his physician to exercise the legs daily, but he was not directed to exercise upon steep stairs.

Respondent invokes the rule that proximate cause is usually a jury question. That the jury could find defendant's negligent driving the cause of Sporna's injury is unquestioned. That being so, he was liable for all the natural and proximate consequences, whether they could be foreseen or not. Christianson v. C. St. P. M. & O. Ry. Co. 67 Minn. 94, 69 N. W. 640. Was decedent's fall on the basement stairs a natural and proximate consequence of defendant's negligence seven months before? Or as put in substance in Gillespie v. G. N. Ry. Co. 124 Minn. 1, 7, 144 N. W. 466, 468: Was decedent's fall due to the interposition of an entirely inde-

pendent and unrelated cause, sufficient in itself to stand as the cause of his death?

"Such a cause must be one which not only comes between the original cause and the injury in point of time, but must turn aside the natural sequence of events and produce a result which would not otherwise have followed."

Chief Justice Gilfillan in Purcell v. St. Paul City Ry. Co. 48 Minn. 134, 138, 50 N. W. 1034, 16 L. R. A. 203, says:

"The new, independent, intervening cause must be one not produced by the wrongful act or omission, but independent of it, and adequate to bring about the injurious result. Whether the natural connection of events was maintained, or was broken by such new, independent cause, is generally a question for the jury."

And so respondent urges here. In support are cited Hyvonen v. Hector Iron Co. 103 Minn. 331, 115 N. W. 167, 123 A. S. R. 332; Hartnett v. Tripp, 231 Mass. 382, 121 N. E. 17, 18. To these may be added East Tennessee Tel. Co. v. Jeffries, 153 Ky. 133, 154 S. W. 1112; Wilder v. General M. S. Co. 232 Mass. 305, 122 N. E. 319; Conner v. City of Nevada, 188 Mo. 148, 86 S. W. 256, 107 A. S. R. 314; Batton v. Public Service Corp. 75 N. J. L. 857, 69 A. 164, 18 L.R.A.(N.S.) 640, 127 A. S. R. 855 (death resulting from a lift while doing her housework, thereby reopening the wound caused by the defendant's negligent act); Wagner v. Mittendorf, 232 N. Y. 481, 134 N. E. 539, 20 A. L. R. 520; Hoseth v. Preston Mill Co. 49 Wash. 682, 96 P. 423; Smith v. N. P. Ry. Co. 79 Wash. 448, 140 P. 685; Wieting v. Town of Millston, 77 Wis. 523, 46 N. W. 879.

In Hartnett v. Tripp, 231 Mass. 382, 121 N. E. 17, the plaintiff had been in a hospital nine weeks to heal his femur, fractured by defendant's negligence, and had recovered so that with aid of crutches he could move between his bed and a wheel chair, when in getting out of the chair one of his crutches slipped and he fell back in the chair, refracturing the femur at the place of the original fracture. The court, in ruling that the question of proximate cause of the second injury was for the jury, said [231 Mass. 385]:

"The second injury, caused by the slipping of the plaintiff's crutch, could have been found to have had a causal relation to the original injury for which the defendant would be liable. It does not appear that the plaintiff acted carelessly or improperly; he had so far recovered from his first injury that he was permitted to use crutches, although still being treated at the hospital. In attempting to get out of the chair with the aid of his crutches, he was performing a natural and necessary act, which could not be ruled was negligent or so distinct from his original injury as to be a separate and independent act." In the opinion it is stated that the case is clearly distinguishable from the prior decisions first above given.

It is to be noted that in all the cases cited in this paragraph the second injury was a refracture of the first fracture or reopening of the first wound occurring while being treated for the same and before a cure was effected. It may be claimed such is the case here. Plaintiff's decedent was still under treatment, and exercising the legs was part of the treatment prescribed. But there is nothing in the record to indicate that decedent thought he was following his doctor's direction when going down this steep stairway. No necessity appears for his doing so. The writer deems it difficult to distinguish Hartnett v. Tripp, 231 Mass. 382, 121 N. E. 17, from Snow v. N. Y. N. H. & H. R. Co. 185 Mass. 321, 70 N. E. 205, and cases cited prior thereto, and concedes that there is some basis in the testimony of the decedent's physician for a finding that the impaired use of the legs may have contributed to or caused the fatal fall. But the court is of the opinion that defendant's negligence of July 1 was not the natural, direct, or proximate cause of decedent's death seven months later, even though his disability from the fractures may have contributed to his fall. One may sustain a personal injury, the loss of a limb for instance, and years afterwards the loss of the member may have an appreciable connection with another bodily injury; yet it would not be thought legally proximate so that the original negligent party was all along the intervening time carrying the risk of some ill result in the happening of which his negligence of years before would have a responsible part. The de-

cedent was moving about for no object connected with his cure, for no purpose incidental to it, and at a place where no one can account for his being on either business or pleasure. He was well towards recovery. This is no evidence of any refracture of the bones fractured or injured on July 1. Sometime the force of the original negligence must be at an end and the law's protection cease. It is difficult to fix the point. Here it should be held that the injury in the auto accident was not a legally proximate cause of the injury from the fall, though the disability from the first injury may be found to have an appreciable connection with the final one.

Defendant also moved for a directed verdict on the ground that decedent's negligence on January 30 contributed to his death. Contributory negligence is ordinarily for the jury. But it seems to us the evidence of such negligence appears here to be conclusive. He needed and was always receiving assistance in going down and up the one step at the back door. He knew better than anyone else of the condition of his legs and the pain their use caused. He walked "wobbly." The stairway was steep. There was no handrail. And there appears no reason for his going down. He had never before tried it since his legs were fractured. His wife was at home and could either have tended to the furnace, if that was his errand, or could have assisted him, as she did when he went outdoors. There is no evidence that the fatal fall was caused by the refracture of any bone fractured on July 1, 1929. We think decedent's own negligent act in attempting to go down the stairs not only caused or contributed to his death, but was the independent efficient cause thereof, intervening long after the occurrence of defendant's negligence.

The order is reversed and the cause remanded with direction to enter judgment notwithstanding the verdict.