65 So.2d 516

AMERICAN LIFE INS. CO. et al. v. POWELL.

Ex parte AMERICAN LIFE INS. CO. et al.

6 Div. 401–402.

Supreme Court of Alabama.

March 13, 1953.

Rehearing Denied May 28, 1953.

Hugh A. Locke, Hugh A. Locke, Jr., F. R. Ingram and Reid B. Barnes, all of Birmingham, and Melvin Hutson and Noble J. Russell, Decatur, for appellants and petitioners.

72

Wilkinson & Skinner, Birmingham, for appellees and respondent.

GOODWYN, Justice.

This is one of several cases pending here in which questions relating to the perpetuation of testimony under Code 1940, Title 7, Sections 491 to 505, as amended, are involved.

While the record in this case, on first examination, appears to be quite involved, we think the resolvement of two questions presented will effectively dispose of this appeal.

█ The first question, a procedural one, calls for determination of the proper method of reviewing orders granting applications to perpetuate testimony under Title 7, Section 491 et seq., as amended, supra. Our conclusion is that such orders are not appealable, and that mandamus is a proper remedy.

█ The second question involves the sufficiency of the affidavits made pursuant to Section 492, Title 7. Specifically, we must decide what is intended by the requirement of Section 492 that "The applicant must make affidavit before a circuit or probate judge, or register stating * * * *the facts generally expected to be proved by the witness.*" (Italics supplied.) Our view is that the affidavits do not meet the requirements of Section 492; that the applications clearly show that the purpose of each is discovery, which is not within the purview of the statutes, supra, authorizing the perpetuation of testimony; and that the judge of the circuit court erred in granting the applications.

Appellee Powell made two affidavits, one on October 26, 1951, before Eugene H. Hawkins, Circuit Judge, prior to the filing of suit, and the other on February 28, 1952, before G. H. Boyd, Register, after suit was filed on November 12, 1951. The first affidavit recites, among other things, "that he expects to be a party to a suit in the Circuit Court of Jefferson County, Alabama, in Equity, in which affiant and others will be parties complainant, and the American Life Insurance Company, a Corporation, and others will be parties respondent," and "that the testimony of each of the following witnesses whose names and places of residence as stated is necessary to prosecution of said

suit." There is then set out the names and addresses of twenty-five witnesses, all residents of Alabama, with eight of the witnesses residing outside of Jefferson County. The affidavit also recites the names of seventeen parties expected to be adverse in said suit, and their respective ages and residences; thirteen of whom are also listed among the twenty-five witnesses. To meet the requirement of Section 492, Title 7, Code of 1940, that the affidavit state "the facts generally expected to be proved by the witness", is the following portion of the affidavit:

"(3) The facts generally expected to be proved by each of said witnesses are:

"(a) The receipt of secret profits by B. P. Autrey, Mrs. E. B. Montgomery, T. W. Wert and M. S. Hobbs and the amounts thereof while agents, or officers of the American Life Insurance Company, a corporation.

"(b) Transactions between American Life Insurance Company, a corporation, and its agents, debtors, officers, employees and other persons, firms, and corporations.

"(c) The connection of B. P. Autrey, Mrs. E. B. Montgomery, T. W. Wert, M. S. Hobbs with said transactions.

"(d) The sums of money received by B. P. Autrey, T. W. Wert, Mrs. E. B. Montgomery and M. S. Hobbs from or as a result of said transactions.

"(e) Transactions between Conville & Company and the American Life Insurance Company, a corporation, Mrs. E. B. Montgomery, T. W. Wert and M. S. Hobbs.

"(f) The general ledger and all subsidiary ledgers and all of the books and records of the American Life Insurance Company, a corporation, and the genuineness of the entries therein relating to loans, commissions, compensations or other payments to B. P. Autrey, Mrs. E. B. Montgomery, T. W. Wert, M. S. Hobbs and J. W. Harrell, and to third persons, firms and corporations.

"(g) The ledger account, checking account, loan account, savings account and the time deposit account of the First National Bank of Birmingham, Alabama, with B. P. Autrey, T. W. Wert, Mrs. E. B. Montgomery and M. S. Hobbs.

"(h) The ledger account, checking account, loan account, savings account and the time deposit account of the Exchange Bank, Birmingham, Alabama, with B. P. Autrey, T. W. Wert, Mrs. E. B. Montgomery and M. S. Hobbs.

"(i) The ledger account, checking account, loan account, savings account and the time deposit account of the Birmingham Trust National Bank, Birmingham, Alabama, with B. P. Autrey, T. W. Wert, Mrs. E. B. Montgomery and M. S. Hobbs.

"(j) The income tax returns and amendments thereof, of Mrs. E. B. Montgomery, T. W. Wert, B. P. Autrey and M. S. Hobbs for the years 1940 to 1950, inclusive, and oral and written statements made by them with respect to said returns or income to any agent or employee of the State or Federal Government.

"(k) The books and records of the National Union Life Insurance Company, and the genuineness of the entries therein relating to acquiring the hospital business or the health and accident and hospital contracts and policies of the American Life Insurance Company, a corporation.

"(l) The proceedings, action of the Board of Directors of the American Life Insurance Company, a corporation, or the Executive Committee of said Board of Directors with respect to said transactions and the minutes of said Board and said Executive Committee and the genuineness of the same."

The affidavit also recites the following:

"(5) In order to completely develop the facts it is necessary that:

"(a) The witness, V. J. Sellers, Assistant Cashier of The First National Bank of Birmingham, Alabama, bring with him the deposit slips, ledger account, checking account, loan account, savings account and time deposit account of B. P. Autrey, Mrs. E. B. Montgomery, T. W. Wert and M. S. Hobbs with the First National Bank of Birmingham, Alabama, from January 1, 1940, to date.

"(b) The witness L. D. Coates, Vice-President and Comptroller of the Birming-

ham Trust National Bank, Birmingham, Alabama, bring with him the deposit slips, ledger account, checking account, loan account, savings account and time deposit account of B. P. Autrey, Mrs. E. B. Montgomery, T. W. Wert and M. S. Hobbs with the Birmingham Trust National Bank, Birmingham, Alabama, from January 1, 1940, to date.

"(c) The witness, Eugene Lott, Assistant Cashier of the Exchange Bank, Birmingham, Alabama, bring with him the deposit slips, ledger account, checking account, loan account, savings account and time deposit account of B. P. Autrey, Mrs. E. B. Montgomery, T. W. Wert and M. S. Hobbs with the Exchange Bank, Birmingham, Alabama, from January 1, 1940, to date.

"(d) The witness T. W. Wert, bring with him the general ledger, the subsidiary ledgers and all other books and records of the American Life Insurance Company, a corporation, relating to loans, commissions, or other payments made to B. P. Autrey, Mrs. E. B. Montgomery, T. W. Wert, M. S. Hobbs, and all books and records of said corporation relating to loans made by the said corporation to third persons, firms and corporations, since January 1, 1940, and all income tax returns or copies thereof made by T. W. Wert to the United States Government or to the State of Alabama for the years 1940 to 1950, inclusive, and also all cancelled checks drawn to the order of Mrs. E. B. Montgomery; also the minutes of the Board of Directors of the American Life Insurance Company, a corporation, the minutes of the Executive Committee of the Board of Directors of the American Life Insurance Company, a corporation, and the stock book of the American Life Insurance Company, a corporation.

"(e) The witness, M. S. Hobbs, bring with him the general ledger, the subsidiary ledgers and all other books and records of the American Life Insurance Company, a corporation, relating to loans, commissions, or other payments made to B. P. Autrey, Mrs. E. B. Montgomery, T. W. Wert and M. S. Hobbs, and all books and records of said corporation relating to loans made by the said corporation to third persons, firms

and corporations since January 1, 1940, and all income tax returns or copies thereof made by M. S. Hobbs to the United States Government or to the State of Alabama for the years 1940 to 1950, inclusive, and also all cancelled checks drawn to the order of Mrs. E. B. Montgomery; also the minutes of the Board of Directors of the American Life Insurance Company, a corporation, the minutes of the Executive Committee of the Board of Directors of the American Life Insurance Company, a corporation, and the stock book of the American Life Insurance Company, a corporation.

"(f) The witness, Mrs. E. B. Montgomery, bring with her the general ledger, the subsidiary ledgers and all other books and records of the American Life Insurance Company, a corporation, relating to loans, commissions, or other payments made to B. P. Autrey, Mrs. E. B. Montgomery, T. W. Wert, and M. S. Hobbs, and all books and records of said corporation relating to loans made by the said corporation to third persons, firms and corporations since January 1, 1940, and all income tax returns or copies thereof made by Mrs. E. B. Montgomery to the United States Government or to the State of Alabama for the years 1940 to 1950, inclusive; also the minutes of the Board of Directors of the American Life Insurance Company, a corporation, the minutes of the Executive Committee of the Board of Directors of the American Life Insurance Company, a corporation, and the stock book of the American Life Insurance Company, a corporation.

"(g) The witness, B. P. Autrey, bring with him all his books and records showing receipts and disbursements of income during the years 1940 to 1950, inclusive; all income tax returns, both State and Federal for the years 1940 through 1950, inclusive, and all amendments thereof; all working papers made by him or his accountant, and all memoranda of tax liability submitted by him to any State or Federal Agent in connection with his income tax liability; also all cancelled checks drawn to the order of Mrs. E. B. Montgomery, T. W. Wert or M. S. Hobbs, and all the records and memoranda of payment of money to either of said parties.

"(h) The witness, Ray Ingram, to bring the books and records of the National Union Life Insurance Company, a corporation, relating to the acquiring of the hospital business or the health and accident and hospital contracts and policies of the American Life Insurance Company, a corporation.

"(i) The witness, K. A. Conville, bring with him all books and records of Conville & Company showing the transactions between Mrs. E. B. Montgomery, T. W. Wert, M. S. Hobbs, and the American Life Insurance Company, a corporation, and Conville & Company, during the years 1940 to 1950, inclusive."

The affidavit made on February 28, 1952, calls for the testimony of twelve witnesses, ten of whom are in addition to the witnesses included in the affidavit of October 26, 1951. This second affidavit states "the facts generally expected to be proved" by the witnesses in much the same manner that they are stated in the first affidavit. We see no need, therefore, to set out the statement of facts in full. The following extract will suffice, we think, to show the nature of the statement, viz.:

"(3) The facts generally expected to be proved by R. L. Roberts and J. C. Sargeant, Jr., are:

"(a) The details of transactions between R. L. Roberts and James C. Sargeant, Jr. or either of them or both of them involving the payment of money to or the receipt of money from Mrs. E. B. Montgomery or M. S. Hobbs or T. W. Wert or B. P. Autrey during the years 1940–1950, inclusive.

"(b) The date and amount of each payment of money by R. L. Roberts or J. C. Sargeant, Jr. to T. W. Wert, Mrs. E. B. Montgomery, M. S. Hobbs or B. P. Autrey during the years 1940–1950, inclusive.

"(c) The date and amount of each sum received by R. L. Roberts or J. C. Sargeant, Jr. or both of them from T. W. Wert, Mrs. E. B. Montgomery, M. S. Hobbs or B. P. Autrey during the years 1940–1950, inclusive.

\* \* \* \* \* \*

"(7) The facts generally expected to be proved by the witness, T. W. Wert, are:

"(a) The number of shares of the capital stock of the American Life Insurance Company, a corporation, in which T. W. Wert owns, holds or claims to own or to hold, the date acquired and from whom acquired, and the number of the stock certificate or stock certificates evidencing such number of shares.

"(b) The date and amount of each deposit made by T. W. Wert in the First National Bank of Birmingham, Alabama, since December 31, 1939, in any and all accounts in said bank under his control.

"(c) The date and amount of each deposit made by T. W. Wert in the Birmingham Trust National Bank, Birmingham, Alabama, since December 31, 1939, in any and all accounts in said bank under his control.

"(d) The date and amount of each deposit made by T. W. Wert in the Bank for Savings and Trusts, Birmingham, Alabama, since December 31, 1939, in any and all accounts in said bank under his control.

"(e) The date and amount of each deposit made by T. W. Wert in the Exchange Bank, Birmingham, Alabama, since December 31, 1939, in any and all accounts in said bank under his control.

"(f) The date and amount of each deposit made by T. W. Wert in the banks in Decatur and Cullman, Alabama, since December 31, 1939, in any and all accounts in said banks under his control.

"(g) The date and amount of each deposit made by T. W. Wert in other banks within or without the State of Alabama other than the banks named above.

"(h) Identification of the original or a copy of the income tax returns made by T. W. Wert with the United States of America and to the State of Alabama each year since December 31, 1940, and the amendments to said returns and the statements submitted by T. W. Wert in connection with the amendments.

"(i) The date and amount of each loan made to T. W. Wert by The First National

Bank of Birmingham, Alabama, since December 31, 1939.

\* \* \* \* \* \*

"(m) The date and amount of each loan made to T. W. Wert by banks within or without the State of Alabama other than the banks named above, since December 31, 1939.

\* \* \* \* \* \*

"(p) The date and amount of each loan made by the American Life Insurance Company, a corporation,· since December 31, 1939; the name of the borrower and the address of the borrower and the security given for the same.

\* \* \* \* \* \*

.·"(t) The contracts between the American Life Insurance Company, a corporation, and Union Life Insurance Association, and the contracts between American Life Insurance Company, a corporation, and B. P. Autrey and Nolan C. Aspinwall, or either of them, relating to the purchase and the sale of Union Life Insurance Association or its assets and liabilities."

The second affidavit also recites that "in order to· completely develop the facts" it is necessary that certain of the witnesses bring with them "all books, records, and writings in their possession or under their control relating to transactions between" said named parties. This request for the production of records is in practically the same form as the request contained in the affidavit of October 26, 1951, set out above.

Judge Hawkins made an order on October 26, 1951, granting, in all respects, the application filed on that day. Thereupon, appellants made a motion to "quash, set aside, annul and vacate" said order, one of the grounds being that the facts generally expected to be proved by the witnesses are not stated in the affidavit, as required by Section 492, Title 7. On February 29, 1952, Judge Hawkins entered an order denying said motion. Also, on the same day, he entered an order granting, in all respects, the second application filed on February 28, 1952. Appellants have appealed from said order denying their motion and also from the order granting the second application. They have also filed in this court petitions for mandamus and prohibition, or other appropriate writ or relief, seeking remedial action if it be determined that appeal is not the proper remedy. Appellees have filed a motion to dismiss the appeal on the ground that the orders appealed from will not support an appeal. All of these matters are before us on one record, 6 Div. 401 and 6 Div. 402 having been consolidated, and will be so considered.

▇ The remedy by appeal "was entirely unknown to the common law. Consequently, the remedy by appeal in actions at law and in equity is purely of constitutional or statutory origin, and exists only when given by some constitutional or statutory provision, and the courts have no inherent authority with respect thereto." 4 C.J.S., Appeal and Error, § 18. It has been stated by this court that "Appeals are of statutory origin and, unless so provided, no appeal will lie." Clary v. Cassels, 258 Ala.Sup. 183, 61 So.2d 692, 697; Johnson v. Barnes, 250 Ala. 292, 34 So.2d 144, 145.

▇ There is no provision for appeal in the statutes authorizing the perpetuation of testimony. Title 7, Sections 491–505, Code 1940, as amended, supra. Nor do we find any other statute authorizing appeals in cases such as this, unless it be Section 754, Title 7, Code 1940, which authorizes appeals to the Supreme Court "From any final judgment or decree of the circuit court, or courts of like jurisdiction, or probate court, except in such cases as are otherwise directed by law." (Italics supplied.) If the orders of Judge Hawkins, here apppealed from, are final judgments or decrees of the circuit court, then, of course, they are appealable. But our view is that such orders are those of the circuit judge, and not of the circuit court, and, consequently, are not appealable under Section 754, supra. We find nothing in the statute to indicate an intention to authorize a perpetuation proceeding to be initiated or carried on in either a court of law or a court of equity. Ours is a special statutory proceeding imposing a duty on the judge or register, and not on the court. That a distinction is often made between the judge and the court is well recognized. Broadfoot v. City of Florence, 253 Ala. 455, 457, 45 So.2d 311; McCarter v. City of Flor-

ence, 213 Ala. 367, 368, 104 So. 806; Craddock v. Oliver, 23 Ala.App. 183, 184, 123 So. 87, certiorari denied 219 Ala. 607, 123 So. 88; 14 Am.Jur., Courts, Section 4, p. 248; 30 Am.Jur., Judges, Section 4, p. 729; 21 C.J.S., Courts, § 1, p. 16.

In reaching the conclusion that orders made by the *judge* are not appealable, we have not overlooked the case of Ex parte Cross, 247 Ala. 85, 91, 22 So.2d 378, 383. While it is true that the conclusion was there reached that "The judgment was appealable" and, therefore, mandamus was not appropriate, the judgment appealed from in that case is entirely different from the orders of the judge involved in the case now before us. In the Cross case there was a judgment of the circuit court, in equity, abating and quashing proceedings then pending before the register of the court to perpetuate a witness' testimony. It was held that that was a final judgment of the *court* disposing of the proceedings, from which an appeal would lie. Section 754, Title 7, supra.

■ Appellants, being apprehensive that the orders are not appealable, have petitioned this court for an appropriate remedial writ. While it might be argued, with some merit, that one of the other writs is also a proper remedy, we think the relief sought falls more within the province of mandamus. The record shows on its face, we think, that appellants have a clear legal right to have the orders granting the applications to perpetuate testimony quashed, vacated, set aside, and annulled, and that there is no other adequate remedy available to them to have this done. As stated in Woodward Iron Company v. Vines, 217 Ala. 369, 371, 116 So. 514, 515:

"The remedy by mandamus will be employed to prevent failure of justice or irreparable injury, *when there is a clear legal right and no other adequate remedy*. Ex parte Jackson, 212 Ala. 496, 103 So. 558."

We come now to consideration of the sufficiency of the affidavits.

One of the requirements of Section 492, Title 7, supra, already noted, is that the affidavit must state "the facts generally expected to be proved by the witness." The question presented is whether the affidavits meet this requirement.

As we understand it, appellees' insistence is that the case of Ex parte Monroe County Bank, 254 Ala. 515, 49 So.2d 161, 163, 23 A.L.R.2d 856, is authority for proceeding by way of discovery under Code 1940, Title 7, Sections 491–505, as amended, supra. The opinion in that case is not to be taken as binding authority that the statute can be used as a means of discovery. It is to be noted that the opinion expressly states as follows:

"We have here no question raised as to the sufficiency of the proceedings calling for the examination in order to perpetuate the testimony of J. B. Barnett, president of The Monroe County Bank. So that we presume on this hearing that the proper proceedings were had, as set out in section 492, Title 7, Code."

In that case we made answer to certain inquiries there presented. What is there observed necessarily must be considered in connection with the inquiries there made and the questions there treated. Since no question was presented as to the sufficiency of the proceedings calling for the examination of the witness, the statute was properly invoked. This, then, precluded an inquiry by us as to whether the initial affidavit contained the prescribed "facts generally expected to be proved by the witness." What we had to say about discovery was not necessarily with reference to Section 492. The controversy then before us, as contested by the parties, admitted that discovery was appropriate. So that, the opinion in that case is not to be taken as authority for holding that the statute in question can be used as a means of discovery, over objection, thereby adding another course open to be pursued for that purpose, when there are ample procedures already existing.

Section 492, Title 7, supra, is squarely presented to this court for interpretation for the first time in the instant case. Our

**78**

views as to the meaning and application of this statute are expressed hereinafter.

■ Appellees do not question that they are proceeding by way of discovery. A reading of the purported "facts generally expected to be proved" shows clearly that the objective is discovery. There is a complete absence of a statement of "facts." The statements in the affidavits are not of "facts" to be preserved, even in general terms, but seem to us to be nothing more than generalized statements of intended searching inquiries into all that the witnesses might know. Such is not within either the letter or the spirit of the Code provisions authorizing the perpetuation of testimony.

A "fact" is a statement of that which someone knows, an actuality, and not a generalized statement of the extent of a proposed inquiry into what one might know.

"Fact" is defined in Webster's New International Dictionary, Second Edition, as "The assertion or statement of a thing done or existing * * *. Law. Specif.: Usually in pl. Any of the circumstances or matters of a case as they are alleged to be; also, that which is of actual occurrence; reality as an event or events."

"Fact" is defined in 35 C.J.S., pp. 384–385, with supporting cases, as follows: "an act or action which is the subject of testimony; action or deed; an actual happening in time or space; an actuality; * *; an event; * * *; something fixed, unchangeable; a thing done; a thing done or said; * * *; what took place, as distinguished from what might or might not have happened; * * *."

As stated in Churchill v. Meade, 92 Or. 626, 182 P. 368, 371, cited to the text of 35 C.J.S., Fact, pp. 384–385: "Facts are actualities. They are what took place, not what might or might not have happened. Things that have in very truth occurred are usually capable of proof."

■ The statement of facts required by Section 492 means, we think, a narrative of events, acts, and things done, of which the witness has knowledge and can give testimony. It means a narrative of the testimony to be given by the witness. It certainly does not mean a statement such as we have in the two affidavits in this case.

Without attempting to delineate the exact form or precise wording of the affidavit with respect to "the facts generally expected to be proved", we call attention to the affidavit set out in the report of the case of Ex parte Cross, 247 Ala. 85, 87, 22 So. 2d 378, as being one which meets the requirement in that respect.

[8] As to the order of February 29, 1952, made pursuant to the affidavit and application of February 28, 1952, there is still another reason why such order should be vacated and annulled. As noted above, the affidavit was made before the *register*, and the order granting the application and allowing the examination of the witnesses was made by the *judge* of the circuit court. This is not authorized by the statute. Sections 491–505, Title 7, as amended, supra. Section 492 authorizes the affidavit to be made before either the circuit or probate judge, or the register. Section 493 provides that "*Such* judge or register *must thereupon* make an order allowing the examination of the witness". (Emphasis supplied.) Clearly, this means the same official before whom the affidavit was made. It does not mean, for instance, that an affidavit made before a circuit judge may then be made the basis of an order by the probate judge or register allowing the examination. A circuit judge can no more make an order based on an affidvait made before a register than can a register or probate judge make an order based on an affidavit made before a circuit judge. The power to act— that is, jurisdiction—comes into being when the required affidavit is made before one of the named officials. Jurisdiction is thereby vested in such official, and only in such official, and this jurisdiction continues throughout the proceeding. Of course, nothing we have said has reference to any supervisory powers inherent or vested by statute in the circuit court. It is clear that the action of the judge in this case in granting the application of February 28, 1952, was not pursuant to any supervisory power which the court might have.

The 1951 Amendment of Sections 495 and 496, Title 7, Code, Act No. 922, approved September 12, 1951, Gen.Acts 1951, p. 1571, authorizing the circuit judge and the probate judge to appoint a commissioner to take a witness' deposition, has no bearing on what we have said except, perhaps, to strengthen the conclusion. Amended Section 495 still refers to "Such judge or register", which means the one who acquired jurisdiction by virtue of the affidavit having been made before him. The effect of the amendment is to give to the probate judge and the circuit judge the authority to appoint a commissioner to take a witness' deposition. Clearly, this means the same judge before whom the affidavit was made and who made the order allowing the examination. It does not mean that a circuit or probate judge can appoint a commissioner in a proceeding in which the register acquired jurisdiction by reason of the affidavit having been made before him.

What we have said in this opinion applies equally as well to a party whose testimony is proposed to be perpetuated as it does to a witness who is not a party. Section 491, Title 7, supra, prior to its amendment in 1949, Act No. 123, approved June 23, 1949, Gen. & Local Acts 1949, p. 149, was construed as not applying to parties. Winter v. Elmore, 88 Ala. 555, 7 So. 250; Ex parte Cross, 247 Ala. 85, 88, 22 So. 2d 378; Ex parte Brooks, 249 Ala. 606, 608, 32 So.2d 534.

As amended, Section 491 reads as follows:

"The testimony of a witness may be taken conditionally and perpetuated as provided in this article *notwithstanding such witness may be a party to the suit in fact or in anticipation.*" (Italics supplied.)

The italicized portion was added by the amendment. What is intended by this amendment? Our view is that there is nothing to indicate an intention to extend application of the statute to parties in any respect except as they may be called to testify as *witnesses*. So far as concerns a proceeding to perpetuate the testimony of a party, such party is in exactly the same

position as any other witness, and is entitled to the same, and only the same, immunities, and is subject to the same, and only the same, penalties as any other witness.

We have been urged by counsel to pass on the equity of the bill filed on November 12, 1951. That question just simply is not before us. A decision now would be premature and have no binding effect.

Counsel for appellees suggest that the statute should be liberalized by interpretation so as to conform by analogy to Rule 26 of the Federal Rules of Civil Procedure, 28 U.S.C.A., which has reference to discovery. We might agree that there is need for improvement of trial procedures in this state, perhaps along the lines now applicable to United States Courts, but the proper method of getting this done is not by judicial enlargement of a statute. We observe, too, that if there is any analogy to be drawn between the Federal rules and our statutes, it is with Rule 27 of the Federal rules, and not Rule 26.

We have treated the order of February 29, 1952, denying the motion to quash and vacate the order of October 26, 1951, as having been made by the *judge* who made said order granting the application to perpetuate, and not as having been made by the *court*. We have done so because it is not clear from the record whether the motion to quash and vacate was presented to and acted on by the judge or by the *court*. In either event, the result in this case would be the same. Moreover, we do not wish to be understood from what we have said, as holding that the circuit *court* has jurisdiction to entertain such a motion, or that action by the circuit *court* denying such a motion is appealable. Those questions are not presented and we do not now pass on them.

In conformity with what we have said, orders are due to be entered here granting the motion to dismiss the appeal and awarding the writ of mandamus to be directed to Honorable Eugene H. Hawkins, as Judge of the Circuit Court of Jefferson County, requiring him to set aside, vacate and annul his orders of October 26, 1951, and February 29, 1952, granting the appli-

cations to perpetuate testimony and allowing examination of the witnesses. It is so ordered.

Appeal dismissed.

Writ of mandamus awarded.

All the Justices concur.